KARNS and another, Respondents, vs. ALLEN and others,. Appellants.

*February 18—March 10, 1908.*

*Pleading: Supplemental complaint: Adoption of answer to original complaint: Nuisance: Assumption of liability: Corporations: Personal liability of officers: Excessive damages: Exemplary damages in equity: Unapportioned damages: Effect on judgment..*

1. In an action in equity to abate a nuisance and to recover damages therefor, the original complaint and an amended complaint were against certain individuals. The defendants' answer to the original complaint contained, among other things,. a general denial. While the action was pending, the original defendants sold the property in connection with which the nuisance was alleged to exist to a corporation. After the sale and after the action was at issue upon the complaint and answer of the original parties, the corporation was made a party. A supplemental complaint was filed alleging that said corporation, as an incident to the conveyance to it, assumed all the rights, duties, and liabilities theretofore resting on its grantors.. Upon the trial the corporation adopted, by leave of court and without objection, the answer of the original defendants. *Held,*. that upon the whole record it was understood by all the parties that by such adoption the original answer was intended to be and was an answer to the supplemental complaint, and therefore put in issue the defendant corporation's assumption of the liabilities of its grantors.

2. In the absence of proof that defendant corporation assumed the liabilities of its grantors in the maintenance of a nuisance prior to its acquisition of property in connection with which the nuisance existed, it is not liable for damages which accrued before the sale.

3. Pending an action in equity to abate a nuisance, the two individual defendants sold the property in connection with which the nuisance existed to a corporation of which they became respectively the president and vice-president. The corporation was made a party to the proceedings. After the sale the nuisance was maintained substantially as before by the defendant corporation acting through the two original defendants as its officers. *Held,* that the individual defendants were personally liable for damages caused by the nuisance after the sale.

4. In an action in equity to abate a nuisance caused by the construction and maintenance of a dam and to recover damages therefor, evidence of permanent injury to plaintiff's freehold and loss of rentals is examined and an award of $900 for the former is found excessive, and of $700 for the latter is found to be supported by sufficient evidence.

5. In an action in equity to abate a nuisance and to recover damages therefor, *held* error to include exemplary damages in an award of compensatory damages.

6. Sec. 3180, Stats. (1898), does not authorize recovery of exemplary damages in an equitable action, and where a plaintiff elects to sue in equity he waives his right to recover exemplary damages.

7. Plaintiff in such an action is entitled to judgment for all damages, not only those accruing prior to the commencement of the action, but up to the time of trial.

8. In an action in equity to abate a nuisance and recover damages therefor, where certain individual defendants caused the nuisance and the defendant corporation, after purchasing the land in connection with which it existed, continued the nuisance, the corporation not being liable for the damages accruing prior to its purchase and the damages not being apportioned, no damages can be awarded against such corporation, but a judgment for abatement was properly awarded against all the defendants.

APPEAL from a judgment of the circuit court for Kenosha county: WARREN D. TARRANT, Judge. *Modified and affirmed.*

This action was commenced in equity on the 27th day of February, 1905, against *Nathan Allen* and *Charles W. Allen* to abate a nuisance alleged to be caused by the construction and maintenance of a dam across Pike creek in the city of Kenosha, and for damages and general relief. The plaintiffs are the owners of lands on the westerly side of said creek, and the defendants *Nathan* and *Charles W. Allen,* prior to the commencement of the action and down to August 1, 1905, were the owners of lands on the easterly side of Pike creek opposite the lands owned by plaintiffs. The original complaint charged that the defendants *Nathan* and *Charles W. Allen* wrongfully and unlawfully in the spring of 1902 con-

structed a dam across Pike creek at a point 500 feet south of the south line of plaintiffs' property and a short distance north of the north line of Grand avenue in the city of Kenosha, for the purpose of retarding the flow of water in the stream and raising its natural level, and afterwards in 1903, when a portion of the dam had been destroyed and washed away, wrongfully and unlawfully rebuilt it; that the result of the construction of this dam was to raise the water in the creek so as to overflow the lower portion of plaintiffs' premises used for gardening purposes and render them impossible of drainage and unfit for cultivation or occupation for gardening or agricultural purposes, and that the dam obstructed the natural flow of the stream, rendered it stagnant, and prevented its carrying out into the lake the contents of sewers, and thereby injured the health of occupants of property situated on the stream and injured the lands and property of plaintiffs. It is further alleged that defendants intend to continue to so interfere with the rights of plaintiffs in the future and to maintain the dam and the encroachments on the creek described in the complaint, and thereby to do great and irreparable injury to the plaintiffs' premises, for which plaintiffs have no adequate remedy at law, and compelling them to bring a multiplicity of suits. The defendants *Nathan* and *Charles W. Allen* answered, admitting the construction and maintenance of the dam, but denied the injuries and damages complained of. The original complaint was amended upon the trial so as to set out further allegations in reference to the collection and detention of sewage in the creek above the dam and the stenches occasioned by the stagnation of the water, and the prayer of the complaint was amended so as to ask for the abatement of the alleged nuisance. The defendants *Nathan* and *Charles W. Allen* amended their answer so as to cover the additional allegations in the amended complaint, and admitted the construction of the dam in 1902 and that it raised the natural level

of the water in the creek about one foot, but denied that the flow of water was retarded, and alleged that the dam brought about a more constant flow in the stream. The answer further alleges that Pike creek opens into Kenosha harbor and Lake Michigan at a point less than one mile distant from plaintiffs' premises, and that the level of the stream until the dam was built was practically the same as Lake Michigan, and that the tide from said lake has always ebbed and flowed back into said creek to a point above the said premises many times each day, the height varying from six inches to three feet; that before the construction of said dam the water was polluted, and that the sole effect of the dam has been to prevent pollution and to collect and retain pure water above the dam, and denies that the erection of the dam has caused any damage to plaintiffs, and also contains a general denial.

On August 1, 1905, the defendants *Nathan* and *Charles W. Allen* sold and conveyed their premises adjacent to the creek to the defendant *N. R. Allen's Sons Company,* a Wisconsin corporation, which corporation has since been the owner and in possession of said premises. On September 11, 1905, the court made an order directing that the *N. R. Allen's Sons Company* be made a party defendant, and thereafter a supplemental complaint was made and filed pursuant to this order. It is alleged in the supplemental complaint that on August 1, 1905, the defendants *Nathan* and *Charles W. Allen* sold the tannery property owned and operated by them to the defendant *N. R. Allen's Sons Company,* which corporation took title to the real estate, business, and tanning establishment theretofore owned by *Nathan* and *Charles W. Allen* with knowledge of the pendency of this action and of the rights of the plaintiffs, and has ever since continued in possession, occupation, and enjoyment of such property; and upon information and belief that said corporation, *N. R. Allen's Sons Company,* as an incident to said conveyance, assumed all the rights, duties, and liabilities theretofore in any man-

ner belonging to or resting or imposed upon the defend-
ants *Nathan* and *Charles W. Allen* in respect to any and
all matters referred to in the original complaint. It fur-
ther alleges that *N. R. Allen's Sons Company* has contin-
ued to maintain and is maintaining and threatens to main-
tain the dam in question, and is obstructing and continuing
to obstruct and threatens to obstruct Pike creek by encroach-
ing upon the natural bed thereof and upon the lands of the
plaintiffs in the manner described in the ninth paragraph
of the plaintiffs' complaint, and by virtue of the conveyance
made to it by *Nathan* and *Charles W. Allen,* and that the
*N.. R. Allen's Sons Company* claims the right to continue
the wrongs described in the complaint as against the plaint-
iffs and their lands and is continuing the damage and in-
jury alleged in the original complaint, for which plaintiffs
are without full and adequate remedy at law. The amended
summons and original complaint and supplemental com-
plaint were served upon defendant *N. R. Allen's Sons Com-
pany.* The defendant company upon the trial by leave of
court adopted the amended answer of defendants *Nathan*
and *Charles W. Allen* as its answer.

The court found generally in favor of plaintiffs, and found
that the defendants wrongfully and unlawfully maintained
and operated the dam, the defendants *Nathan* and *Charles
W. Allen* from 1902, and the defendant *N. R. Allen's Sons
Company* from August 1, 1905; that the dam creating the
nuisance was wrongfully and unlawfully rebuilt by *Nathan*
and *Charles W. Allen* against the protest of plaintiffs and in
reckless disregard of their rights after its original construc-
tion in 1902; that on August 1, 1905, the defendant com-
pany bought the premises in question and ever since has
maintained thereon and threatens to maintain the dam; and
that said dam is a nuisance and has damaged plaintiffs as
follows: $900 permanent injury to the land, which will not be
lessened by the removal of the dam; loss of rents, $700; dis-

comfort by reason of odors, smells, and stenches, $200; exemplary damages against *Nathan* and *Charles W. Allen,* $500; and further found that the injury was irreparable. Judgment was entered in accordance with the findings, from which this appeal was taken.

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *George Lines* and *Cavanagh & Barnes,* of counsel, and oral argument by *Mr. Lines.*

For the respondents there was a brief by *Winkler, Flanders, Bottum & Fawsett,* attorneys, and *James G. Flanders,* of counsel, and oral argument by *Mr. Flanders.*

Kerwin, J.  1. Error is assigned because the court gave judgment against all defendants for the entire damages resulting from the erection and maintenance of the dam.  This error is based upon the contention that in any event the defendant corporation could only be liable for damages accruing after the sale to it, and that the defendants *Nathan* and *Charles W. Allen* could only be liable for damages accruing before sale to the corporation.  In the supplemental complaint, made and filed after sale to defendant corporation, it is alleged upon information and belief that said defendant corporation, as an incident to the conveyance, assumed all the rights, duties, and liabilities theretofore in any manner belonging to or resting or imposed upon the defendants *Nathan* and *Charles W. Allen* in respect to any and all the matters referred to in the original complaint and out of which the causes of action stated therein had their origin.  It is claimed on the part of the appellants that this allegation was denied by the answer of the corporation and no proof made of such allegation upon the trial, while on the part of the respondents it is insisted that such allegations were admitted by the pleadings, hence no proof was necessary.  The court made no finding upon this subject and we find no proof in the record sustaining such allegations.  We must therefore deter-

mine the question upon the pleadings. As appears from the statement of facts the original complaint was made against *Nathan* and *Charles W. Allen* and they answered. Afterwards the complaint was amended, and the defendants *Nathan* and *Charles W. Allen* amended their answer thereto. The defendant corporation was brought in and made a party defendant after sale and after the action was at issue upon the complaint and answer of the original parties thereto. The answer to the original complaint contained, among other things, a general denial, and upon the trial after the supplemental complaint had been made and served, setting forth the liability of the defendant corporation, such corporation adopted, by leave of court, and, so far as the record shows, without objection, the answer of the defendants *Nathan* and *Charles W. Allen* as its answer in the case. The question, therefore, arises whether the allegations of the supplemental complaint were put in issue by the adoption by the corporation of the answer of the defendants *Nathan* and *Charles W. Allen* to the original complaint. The question is somewhat novel and not free from difficulty and we have been unable to find any authority upon the subject. The material allegations of the supplemental complaint are the sale of the property to the defendant corporation and assumption of liability by it. All other allegations in the action were put in issue by the original complaint and answer, and the opinion of the court upon the whole record is that when the corporation appeared in court and adopted the answer of the defendants *Nathan* and *Charles W. Allen,* which contained a general denial, it was understood and intended by all parties to the action that such answer was intended to be and was an answer to the supplemental complaint. We think that the recitals made by the trial court in the judgment and findings support this idea, and that the case was tried upon the theory that the allegations of the supplemental complaint were in issue. The court found upon sufficient evidence that

in the spring of 1902 the defendants *Nathan* and *Charles W. Allen,* as copartners, unlawfully and without the consent of plaintiffs or their predecessors in title constructed the dam in question, and afterwards wrongfully rebuilt the same and maintained it until August 1, 1905, when they sold and conveyed the property upon which said dam was situate to the defendant *N. R. Allen's Sons Company,* which company has ever since remained in possession of such property and has continued to maintain since said purchase and threatens to maintain in the future said dam.   The dam having been constructed and maintained by the defendants *Nathan* and *Charles W. Allen* up to the time of sale to the defendant corporation, and there being no proof of assumption of liability by defendant corporation, we find nothing in the record which would justify a judgment for damages against the corporation accruing in consequence of such nuisance before the sale.   It appears that since the sale the dam has been maintained in substantially the same manner as before by the corporation defendant, the defendants *Nathan* and *Charles W. Allen* acting as officers, namely, president and vice-president, of said corporation defendant and carrying on the business for such corporation and maintaining the nuisance. So, upon the established facts, the defendants *Nathan* and *Charles W. Allen* continued liable for the maintenance of the nuisance after the sale.   2 Wood, Nuisances (3d ed.) § 834; 21 Am. & Eng. Ency. of Law (2d ed.) 719, and cases cited.

2.  Error is assigned because the damages allowed for permanent injury to the freehold are excessive.   The land in question is less than half an acre in area and the evidence shows that it was valuable principally for agricultural purposes.   It had been used prior to the erection of the dam for a garden.   The plaintiffs' witness testified on direct examination that it was worth before the nuisance was created from $800 to $1,000, but afterwards, on cross-examination, testi-

fied that it was worth from $600 to $800, and that it was worth but little for anything but garden purposes, and stated that he could not say what it was worth after the injury by the dam. The plaintiffs' evidence shows that the soil was washed away and the land gullied out in such manner that it would cost more than it was originally worth to put it back in the condition it was before the injury. The witnesses on the part of the defendants placed the value of the land at the time of trial at about $400. This is the only evidence respecting the exact value of the land at the time of trial and after the injury caused by the erection and maintenance of the dam. True, the evidence on the part of the plaintiffs is to the effect that it was only valuable for garden purposes, yet the principal witness for the plaintiffs testified that he could not say just what it was worth at the time of trial. It is very difficult to see in this condition of the evidence how the finding of the court that the injury to the freehold was $900 can be sustained. It is very obvious from all the testimony that the land was of some value at the time of trial, even if it be conceded that it was washed away and gullied out in the manner described by plaintiffs' witnesses, and that before the injury it was valuable especially for garden purposes. The testimony as to the value before and after the injury is quite unsatisfactory. As before observed, the only definite testimony as to value after the injury is that of defendants' witnesses, who place it at $400. So upon this state of the record we think it clear that the damages allowed were excessive, and after a careful examination of the evidence the court is of the opinion that the item of $900 damages for injury to the freehold should be reduced to the sum of $600.

3. It is also claimed that the sum awarded for loss of rentals is excessive and that the finding in that regard rests wholly upon opinion evidence. But upon this point we think the evidence competent, and we cannot say that the finding is against the clear preponderance of the evidence. There is ample evidence that the rental value was greatly depreciated

by the noxious odors caused by the maintenance of the dam. True, there is a sharp conflict as to whether the dam increased these odors, but there is considerable evidence that it did, and we cannot say that the finding is against the clear preponderance of the evidence. There is evidence of the rental value of the property in the absence of the nuisance, and evidence of what it actually rented for during the continuance of the nuisance, and such evidence fully supports the finding of the court below to the effect that there was a loss in rentals to the amount of $700 caused by the maintenance of the nuisance.

4. Error is also assigned because the court awarded $500 exemplary damages. This finding is assailed upon the ground that no sufficient showing was made entitling plaintiffs to exemplary damages, even if the same were recoverable; and further, that a court of equity cannot give exemplary damages. Upon the proposition that a court of equity should not award exemplary damages no authority is cited by counsel on either side directly in point except 1 Sedgw. Dam. (8th ed.) § 371, to which is cited in support of the text *Bird v. W. & M. R. Co.* 8 Rich. Eq. 46. Counsel for respondents contend that the general doctrine, namely, that when a court of equity takes jurisdiction it will give complete relief, and where necessary assess damages, authorizes the court in this case to award exemplary damages. Of course the general rule that where a court of equity takes jurisdiction it will award full relief is well understood, but the question is whether a court of equity should in any case award exemplary damages, or is it confined simply to giving compensatory damages? After considerable search we have been able to find no case where exemplary damages were allowed by a court of equity; and while our investigation shows a great dearth of authority in point on the subject, the cases which in any way touch the question appear to lean to the doctrine that a court of equity should award only compensatory damages. This rule seems to be in harmony with the general doctrine that equity juris-

diction is invoked for the purpose of administering equitable relief in cases where courts of law are without power to grant adequate relief. And where in equitable actions it becomes necessary to award damages, only compensatory damages should be allowed. 2 Suth. Dam. (3d ed.) § 392; *People's Nat. Bank v. Kern,* 8 Pa. Dist. Rep. 72; *Sanders v. Anderson,* 10 Rich. Eq. 232; 2 Beach, Mod. Eq. Jur. § 1014. It is settled in this state that exemplary damages cannot be recovered as matter of right, even in an action at law, but are left to the discretion of the jury. *Robinson v. Superior R. T. Co.* 94 Wis. 345, 68 N. W. 961; *Haberman v. Gasser,* 104 Wis. 98, 80 N. W. 105. And it has been held that where one comes into a court of equity he waives his claim for punitory damages. *Bird v. W. & M. R. Co.* 8 Rich. Eq. 46. The damages awarded by courts of equity when they assess damages are only such as are ancillary to the main relief and which become necessary to award in order to compensate the party entitled to damages. *Andrews v. Brown,* 3 Cush. 130; 1 Pom. Eq. Jur. (3d ed.) §§ 112, 178. Counsel for respondents insist that the rule to the effect that a court of equity should not award exemplary damages is not the rule in Wisconsin, under sec. 3180, Stats. (1898), and our decisions which hold that where a court of equity takes jurisdiction it can award damages as well as a court of law. The damages which may be recovered in an equitable action under our decisions are compensatory and not exemplary damages. We think no decision of this court can be found where in an equitable action exemplary damages were allowed. Sec. 3180, Stats. (1898), does not authorize the recovery of exemplary damages in an equitable action. It clearly provides that an action at law may be brought to abate a nuisance, and where the nuisance may work irreparable injury, interminable litigation, multiplicity of actions, or where the injury is continuous and constantly recurring, or there is not an adequate remedy at law, or the injury is not susceptible of adequate compensation in damages at law, an

Karns v. Allen, 135 Wis. 48.

action in equity may be brought before the nuisance is es-
tablished at law.   Under this statute the plaintiffs had their
election to sue at law or in equity.   They elected to sue in
equity, and having done so they brought themselves within
the rules of equitable actions and waived the right to re-
cover exemplary damages.   We are therefore of the opinion
that the court was in error in giving plaintiffs exemplary
damages.

5. It is further insisted that the plaintiffs were only en-
titled to damages up to the time of the commencement of the
action.   This would doubtless be true if the action were at
law.   *Stadler v. Grieben,* 61 Wis. 500, 21 N. W. 629.   But
the present action being in equity, we think plaintiffs were
entitled to judgment for all damages, not only those accruing
prior to the commencement of the action, but up to the time
of trial.   22 Cyc. 967, 968; *Beir v. Cooke,* 37 Hun, 38, 41;
*Carmichael v. Texarkana,* 94 Fed. 561; *Vandevoort v.
Gould,* 36 N. Y. 639.   The corporation not being liable
for damages under the proof before its purchase, and the
damages not having been apportioned, but assessed from the
time of the construction of the dam to the time of trial, the
defendant *N. R. Allen's Sons Company* cannot be held for
damages; but the defendant company having maintained
the nuisance since it purchased, judgment for abatement was
properly awarded against all defendants.   It follows that
the judgment must be modified in accordance with this
opinion.

*By the Court.*—The judgment of the court below is modi-
fied by changing paragraph 1 to read as follows:

1. That the plaintiffs *Sarah F. Karns* and *Mary M. Karns*
do have and recover from the defendants *Nathan* and *Charles
W. Allen* the sum of $1,500 damages.

And by striking out paragraph 2, which awards plaintiffs
$500 exemplary damages, and as so modified is affirmed.

The appellants are allowed costs in this court.