509 F.2d 1362
 29 A.L.R.Fed. 593
 ALFRED A. KNOPF, INC., et al., Appellees,
v.
William COLBY, as Director of Central Intelligence of the
United States, andHenry Kissinger, as Secretary of
State of the United States, Appellants.
ALFRED A. KNOPF, INC., et al., Appellants,
v.
William COLBY, as Director of Central Intelligence of the
United States, andHenry Kissinger, as Secretary of
State of the United States, Appellees.
 Nos. 74--1478, 74--1479.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 3, 1974.
Decided Feb. 7, 1975.
Certiorari Denied April 14, 1975.
See 95 S.Ct. 1555.
Certiorari Denied May 27, 1975.
See 95 S.Ct. 1999.
 
 Floyd Abrams, New York Ciry (Eugene R. Scheiman, Loretta A. Preska and Cahill Gordon & Reindel, New York City, on brief), for Alfred A. Knopf. Inc.
 Melvin L. Wulf, New York City (John H. F. Shattuck, American Civil Liberties Union Foundation, New York City, on brief), for Marchetti and Marks.
 Irwin Goldbloom, Atty., U.S. Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., Brian P. Gettings, U.S. Atty., David J. Anderson and Raymond D. Battocchi, Attys., U.S. Dept. of Justice, John S. Warner, Gen. Counsel, Lawrence R. Houston and John K. Greaney, Attys., C.I.A., Mark B. Feldman, Deputy Legal Adviser, and K. Eugene Malmborg, Asst. Legal Adviser, Dept. of State, on brief), for William Colby and Henry Kissinger.
 Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.
 HAYNSWORTH, Chief Judge:
 
 
 1
 This is a sequel to United States v. Marchetti, 4 Cir., 466 F.2d 1309 in which, because of a secrecy agreement he had executed, we upheld an injunction prohibiting Marchetti's public disclosure of classified information acquired by him during the course of his employment by the Central Intelligence Agency and requiring him to submit any material he intended to publish to that agency for its review in advance of publication.
 
 
 2
 After our earlier decision, Marchetti, in collaboration with John Marks, a former employee of the State Department who had bound himself not to disclose classified information acquired by him during the course of his employment, prepared the manuscript of a book which the plaintiff, Alfred A. Knopf, Inc. intended to publish. After review in the CIA, a letter was written specifying the deletion of 339 items said to contain classified information. Later, after a conference with Marchetti and his lawyer, the CIA agreed to release 114 of the deletions. Later another 29 deletion items were released and still later another 57, leaving 168 deletion items upon which the CIA stood fast.
 
 
 3
 This action was filed by Alfred A. Knopf, Inc., Marchetti and Marks in the United States District Court for the Southern District of New York, seeking an order which would permit the publication of the then remaining deletion items. On motion of the defendants, the action was transferred to the Eastern District of Virginia where the Marchetti case had been tried and where it could come before the same judge who had tried Marchetti.
 
 I.
 
 4
 At the trial, the four deputy directors of the CIA were presented as witnesses. Collectively they covered all of the 168 deletion items, each covering certain of them. Each testified, in effect, that the deletion item revealed information which was classified, that the information was classified from the inception of the program or from the time of the witness' first contact with it and was still classified. With respect to most, if not all of the items, however, the witness was unable to say who classified the information, for Executive Order No. 10501,[1] in effect in the relevant times, did not require the classifying officer to record his identity, as Executive Order No. 11652[2] now does. Nor were they certain about when a particular matter had been classified except certain of the items with respect to which the witness stated the information and been classified from the beginning or from the time of his first contact with it.
 
 
 5
 These witnesses were questioned about the manner in which they determined that particular items had been classified. Typically, the response was that the witness read the Marchetti-Marks manuscript, marked passages which he thought revealed classified information and then called upon members of the staff for research assistance. The witness indicated that he wished to be certain of his grounds and to make no mistake. The witness then reviewed classified documents produced by the staff, and, after consultation with staff assistants, made his determination or judgment that particular information was, indeed, classified. There were indications that the witness considered his own recollection, institutional history, reports of staff members and classified documents in deciding whether or not particular information was classified.
 
 
 6
 The District Judge was persuaded that information, which might be sensitive to our national defense or to our relations with foreign nations, is not classsified until a classifying officer makes a conscious determination that the governmental interest in secrecy outweighs a general policy of disclosure and applies a lable of 'Top Secret' or 'Secret' or 'Confidential' to the information in question. The testimony of the deputy directors, with its imprecision and the generality of the considerations which they said underlaid their determinations seemed insufficient to persuade him that undisclosed individuals had gone through such conscious processes during the time of Marchetti's employment. It seemed to him that the deputy directors were making ad hoc classifications of material after having read the Marchetti-Marks manuscript, though he recognized that the deputy directors denied that they were doing any such thing.
 
 
 7
 Late in the trial, the United States offered a batch of documents, most of them bearing 'Top Secret' stamps and collectively containing information relating to the deletion items. Some of these documents dealt with the actual classification of certain information. When a document, for instance, specified that certain information relating to a particular program should be classified as 'Top Secret' while other information respecting that program should be classified as 'Secret', the Judge accepted the document as showing that someone had gone through the conscious process of deciding whether, and in what degree, particular information should be classified. On this basis the District Judge found that the information embodied in 26 of the 168 items was classified during the time of Marchetti's employment. As to the remainder of the 168 deletion items, however, he found the submitted documents of no persuasive value. He was of that opinion because he had been told that a document properly classified as 'Top Secret' may contain some bits of information which are not classifiable at all. His difficulty was compounded by the fact that many of the documents marked 'Top Secret' had been reproduced with all of their contents blocked out except for one paragraph, sentence or message relating to a deletion item. He reasoned that only the classifying officer could say what information in a particular document led him to classify the entire document 'Top Secret' and that a limited disclosure of something extracted from a document classified as 'Top Secret' did not establish classification of that information as 'Top Secret' or even as being classified in any degree. Recognizing that the deputy directors, at the very least, had testified that the disclosed information was classifiable, he still was of the view that the testimony and the documents in combination did not prove that the disclosed classifiable information had in fact been classified by the unidentified and possibly unidentifiable classifying officer. Though recognizing that some or much of the disclosed information, revealed in the deletion items, was 'sensitive', the District Judge concluded that the United States had not shown that the remaining 142 deletion items had been classified. He felt, in short, since reasonableness of classification was proscribed, as we held in Marchetti, appropriate recognition of the first amendment rights of Marchetti and of Marks required strict proof of classification which he found wanting under the standards developed at the trial.
 
 
 8
 When writing in Marchetti, we did not foresee the problems as they developed in the district court. We had not envisioned any problem of identifying classified information embodied in a document produced from the files of such an agency as the CIA and marked 'Top Secret', 'Secret' or 'Confidential'. Of course, a document containing the results of tests of highly secret equipment may contain an incidental reference to the weather on a given day at a designated place in the United States, but we foresaw no particular problem in separating the grain from such chaff. With our strictures against inquiry into the reasonableness of any classification, however, we perhaps misled the District Judge into the imposition upon the United States of an unreasonable and improper burden of proof of classification.
 
 
 9
 When the earlier case was before us, we had supposed that all information in a classified document in the possession of the CIA, except rather obvious chaff of the sort we have mentioned, should be held to be classified and not subject to disclosure. We were influenced in substantial part by the principle that executive decisions respecting the classifying of information are not subject to judicial review. See, e.g., EPA v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1972). The October 1974 amendments[3] to the Freedom of Information Act introduced new considerations. Title 5, Section 552(b)(1) of the United States Code has been amended to provide for non-disclosure of matters that are '(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.' Furthermore, a new subsection was introduced into Section 552(a), paragraph (B) of the new subsection now numbered (4) specifically providing for judicial review de novo and specifically providing that the judge 'may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.' The legislative history makes it clear that the Congress intended to overthrow the result of Mink. See, e.g., Conference Report No. 93--1200, U.S.Code Cong. & Admin.News, 93rd Cong., 2d Sess. pp. 6221 at 6223, 6226. That history also discloses a congressional intention that the judge need not inspect the document in camera or require its production. He may act on the basis of testimony or affidavits but, in appropriate cases, he now has a right by virtue of the statute to require production of the document for his inspection in camera.
 
 
 10
 Since the Freedom of Information Act as now amended clearly provides for judicial review of questions of classifiability, any citizen now can compel the production of information actually classified if its classification was not authorized by the Executive Order.[4] These plainiffs should not be denied the right to publish information which any citizen could compel the CIA to produce and, after production, could publish. We thus move to the conclusion that the deletion items should be suppressed only if they are found both to be classified and classifiable under the Executive Order.
 
 
 11
 We observed in Marchetti that the Congress has required the Director of the CIA to protect intelligence sources and methods from unauthorized disclosure.[5] In keeping with the Congressional directive, Executive Order No. 11652, Classification and Declassification of National Security Information and Material, as amended by Executive Order No. 11714[6] provides in § (1)(A) that information shall be classified 'Top Secret' if its disclosure would disrupt 'foreign relations vitally affecting the national security,' would compromise 'vital national defense plans * * * communications intelligence systems,' would reveal 'sensitive intelligence operations' or disclose 'scientific or technological developments vital to national security.' Subparagraph B provides that information shall be classified as 'Secret' if it reveals 'significant military plans or intelligence operations.' This would encompass any significant intelligence operations not otherwise classificable under Subparagraph A as 'Top Secret.' Subparagraph C requires the classification as 'Confidential' of all other information the unauthorized disclosure of which might reasonably be expected to damage the national security.
 
 
 12
 The author of this opinion has examined some, but not all, of the 142 deletion items. The information in at least some of them does relate to sensitive intelligence operations and to scientific and technological developments useful, if not vital, to national security. Such items would seem clearly to be classifiable under the authorization of the Executive Order; others may relate to intelligence sources or methods, the protection of which Congress has decreed in the National Security Act of 1947[7] and classifiable under the Executive Order.
 
 
 13
 The statutory requirement is not directed to any procedure. It simply requires protection of intelligence sources and methods against unauthorized disclosure, and provision of such protection may require a variety of activity. One obviously appropriate tool in providing that protection, however, is a system of classification required under a succession of Executive orders. Under the statute and those orders, a classifying officer is required to classify a document containing classifiable information and to determine the degree under the guidelines of the current Executive order. Under Executive Order No. 10501, he performed his duty by affixing the appropriate stamp, 'Top Secret', 'Secret' or 'Confidential.'
 
 
 14
 There is a presumption of regularity in the performance by a public official of his public duty. 'The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.' United States v. Chemical Foundation, Inc., 272 U.S. 1 at 14, 15,47 S.Ct. 1 at 6, 71 L.Ed. 131. That presumption leaves no room for speculation that information which the district court can recognize as proper for top secret classification was not classified at all by the official who placed the 'Top Secret' legend on the document. This is so whether or not the document contains or may contain other information which should have been classified in the same degree. Under the prevailing practice of classifying a document in accordance with the most sensitive information it contains, the presumption, in the absence of affirmative proof to the contrary, requires the conclusion that all information within it, required by the Executive Order to be classified, was classified when the legend was affixed to the document, even though the particular bit of relevant information, alone, may be properly classified only in a lower degree than the document's classification. In short, the government was required to show no more than that each deletion item disclosed information which was required to be classified in any degree and which was contained in a document bearing a classification stamp.
 
 
 15
 The presumption dispenses with another problem which bothered the District Judge, the time of classification. He took the view that the government must show that the document was classified before Marchetti left the service. We are dealing, however, with information acquired by Marchetti during his employment by the CIA. It simply cannot be supposed that no one performed the duty of classification until after his employment had terminated.
 
 
 16
 It would have been nice, of course, if, in each instance, the government could have identified and produced the classifying officer who, from other records or extraordinary memory, could have testified that he classified the document on a certain day and that, in doing so, he consciously intended to classify the relevant item of information. That was a practical impossibility, but, in light of the presumption, unnecessary. The office of the presumption, however, is supported by the testimony of the deputy directors that information was classified from the beginning of the operation to which it relates or from the time the Agency first received it.
 
 
 17
 Nor was it necessary for the government to disclose to lawyers, judges, court reporters, expert witnesses and others, perhaps, sensitive but irrelevant information in a classified document in order to prove that a particular item of information within it had been classified. It is not to slight judges, lawyers or anyone else to suggest that any such disclosure carries with it serious risk that highly sensitive information may be compromised. In our own chambers, we are ill equipped to provide the kind of security highly sensitive information should have. The national interest requires that the government withhold or delete unrelated items of sensitive information, as it did, in the absence of compelling necessity. It is enough, as we have said, that the particular item of information is classifiable and is shown to have been embodied in a classified document. This approach is consistent with the Freedom of Information Act which, as we have noticed, provides the judge only with discretionary authority even to require production of the document for his in camera inspection; he may find the information both classified and classifiable on the basis of testimony or affidavits.
 
 
 18
 It is said, however, that some classifiable information is not classified. Reference is made to disclosure of this country's development of Multiple Independently Targeted Reentry Vehicles and the release of information about North Vietneamese forces operating in South Vietnam, including the identity of units, their strength and the routes they took to reach their operating areas. These disclosures, however, were the result of high level executive decisions that disclosure was in the public interest, to counter popular and congressional pressure for more missiles, in the first instance, and, in the second instance, to bolster domestic support for our own military effort in South Vietnam. They are instances of declassification by official public disclosure. There has been no such disclosure of any of the information with which we are concerned, and there is nothing in the record to suggest that any of this classified information has, otherwise, been officially declassified. In the absence of declassification and of any countervailing evidence, the testimony of the deputy directors and the presumption of regularity compel a finding that information properly classified under the guidelines of the applicable Executive Order and embodied in a document bearing a classification stamp was classified at the time the information first came into the possession of the Agency or Department.
 
 
 19
 Moreover, if the documents in evidence, the testimony of the deputy directors and the presumptions compel a judicial finding that the material is both classifiable and classified, the plaintiffs are not without an avenue of relief within the Executive Branch. Under § 7 of Executive Order 11652, the National Security Council was given the responsibility of monitoring the implementation of the Order. To assist the Council, an Interagency Classification Review Committee was created. It is authorized to consider and act upon suggestions and complaint from persons within and without government. Composed of representatives of the Departments of State, Defense, and Justice, the Atomic Energy Commission, the Central Intelligence Agency and the Staff of the Security Council, it would not be expected to serve any parochial interest of particular agency unless it coincided with the national interest. The members of the Review Committee, far more than any judge, have the background for making classification and declassification decisions. If, therefore, any of the items in dispute are thought to be properly declassifiable now, there appears to be an available administrative remedy which is far more effective than any the judiciary may provide, which can function without threat to the national security and which can act within the Executive's traditional sphere of autonomy.
 
 
 20
 For such reasons, we conclude that the burden of proof imposed upon the defendants to establish classification was far too stringent and that it is appropriate to vacate the judgment and remand for reconsideration and fresh findings imposing a burden of proof consistent with this opinion and including the additional element of classifiability.
 
 II.
 
 21
 We decline to modify our previous holding that the First Amendment is nor bar against an injunction forbidding the disclosure of classifiable information within the guidelines of the Executive Orders when (1) the classified information was acquired, during the course of his employment, by an employee of a United States agency or department in which such information is handled and (2) its disclosure would violate a solemn agreement made by the employee at the commencement of his employment. With respect to such information, by his execution of the secrecy agreement and his entry into the confidential employment relationship, he effectively relinquished his First Amendment rights.
 
 III.
 
 22
 The District Judge properly held that classified information obtained by the CIA or the State Department was not in the public domain unless there had been official disclosure of it. This we strongly intimated in our earlier opinion. Rumors and speculations circulate and sometimes get into print. It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so. The reading public is accustomed to treating reports from uncertain sources as being of uncertain reliability, but it would not be inclined to discredit reports of sensitive information revealed by an official of the United States in a position to know of what he spoke. The problem is highlighted and the appropriateness of the answer we reach emphasized by the fact that Marks, on Fifth Amendment grounds, on five different occasions declined to answer whether he was the undisclosed source of information contained in five magazine articles offered by the plaintiffs to show that the information was in the public domain. A public official in a confidential relationship surely may not leak information in violation of the confidence reposed in him and use the resulting publication as legitimating his own subsequent open and public disclosure of the same information. The same rule must apply though there be no basis for suspicion that one of the plaintiffs was the undisclosed source of the previously published information, for security of all official secrets would break down if speculative and unattributed reports were held to have removed all of their protection from them.
 
 
 23
 It is true that others may republish previously published material, but such republication by strangers to it lends no additional credence to it. Marchetti and Marks are quite different, for their republication of the material would lend credence to it, and, unlike strangers referring to earlier unattributed reports, they are bound by formal agreements not to disclose such information.
 
 
 24
 One may imagine situations in which information has been so widely circulated and is so generally believed to be true, that confirmation by one in a position to know would add nothing to its weight. However, appraisals of such situations by the judiciary would present a host of problems and obstacles. It may readily be done by the Interagency Classification Review Committee. If a particular item is held by the court to be not in the public domain because not officially disclosed, the Review Committee may still find that it has so far entered the public domain that it should be declassified. As long as it remains classified, however, there should be no further judicial inquiry.
 
 IV.
 
 25
 On the basis of what the District Judge described as 'an extremely subjective judgment' he found that seven of the deletion items contained information which was either learned by them outside of their employment or was learned both during their employment and afterwards and would have been learned afterwards 'in any event.' He concluded that they could publish the information contained in those items.
 
 
 26
 The agreement, of course, covers only information learned by them during their employment and in consequence of it. It does not cover information gathered by them outside of their employment or after its termination. They may not publish information first received by them during the course of their employment even though they later learned of it by communications which did not place the information in the public domain. In a sense, they may be said the have later learned all of the information contained in articles and other materials offered by them in an attempt to show that certain information was in the public domain, but that is not the kind of knowledge acquisition which places the material beyond the reach of the secrecy agreements. Information later received as a consequence of the indiscretion of overly trusting former associates is in the same category. In short, the individuals bound by the secrecy agreements may not disclose information, still classified, learned by them during their employments regardless of what they may learn or might learn thereafter.
 
 
 27
 Moreover, neither should be heard to say that he did not learn of information during the course of his employment if the information was in the Agency and he had access to it. At least, a substantial presumption should be raised against him in those circumstances. With whatever apparent sincerity a fallible recollection may be expressed, one in Marchetti's high position in the CIA should be presumed to have been informed of all important items of information to which he had access.
 
 
 28
 On remand the District Judge should review these general findings in light of this opinion, authorizing disclosure of those items of information only which first came to them unofficially after the termination of their employment.
 
 V.
 
 29
 The judgment is affirmed in part, vacated in part and remanded for such further proceedings as may be necessary in accordance with this opinion.
 
 
 30
 Affirmed in part; vacated in part; remanded.
 
 
 
 [1]
 November 10, 1953, 18 Fed.Reg. 7049
 
 
 [2]
 March 10, 1972 as amended April 26, 1973, 38 Fed.Reg. 10245
 
 
 [3]
 Pub.L.No. 93--502, 88 Stat. 1561
 
 
 [4]
 § 552(b)(3) was not amended. It exempts matters 'specifically exempted from disclosure by statute.' The statutory direction to the Director to protest intelligence sources and methods from unauthorized disclosure may be such a statute, but such information is also clearly authorized to be classified by the Executive order. The problems that will arise therefore will be concerned with the application of (b)(1) rather than (b)(3)
 
 
 [5]
 50 U.S.C.A. § 403(d)(3). See Marchetti, 466 F.2d 1309 at 1316
 
 
 [6]
 38 Fed.Reg. 10245
 
 
 [7]
 50 U.S.C.A. § 403(d)(3)