**UNITED STATES of America**

v.

**Ronald William PELTON.**

**Crim. No. HM85–0621.**

United States District Court,
D. Maryland.

May 23, 1986.

See also 835 F.2d 1067.

Breckenridge Willcox, U.S. Atty., Robert N. McDonald, and John G. Douglass, Asst. U.S. Attys., Baltimore, Md., for U.S.

Fred Warren Bennett, Federal Public Defender, Baltimore, Md., for defendant.

### MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

Ronald William Pelton, the defendant in this case, has been charged in a six-count indictment with delivery of national defense information to a foreign government and other lesser offenses. Among the evidence that the government plans to introduce at trial are tape-recordings of two telephone calls allegedly made by Pelton on January 14 and 15, 1980 to a "targeted premise." The tapes are classified as "SECRET", as is the identity and location of the electronic surveillance which produced the recordings.

The government asserts that disclosure of information which is classified SECRET could cause damage to the national security, and therefore during trial, it plans to play the tapes through headphones to only the court, counsel, defendant, and the jury. The government has offered to make available to the press and public a redacted transcript of the recorded conversations, omitting those portions which the govern-

ment seeks to protect for reasons of national security.

Abell Communications Corporation ["Abell"] and the National Broadcasting Company ["NBC"] have filed a motion to intervene in this case for purposes of asserting rights, under the First Amendment and the common law, of access to judicial records. Specifically, Abell/NBC seeks an order from the court granting it access to and permitting the copying of any audio tapes admitted into evidence at the trial of this case.

A hearing was held on Tuesday, May 20, 1986, at which the court heard argument from the government, Abell/NBC, and, briefly, from the defendant.[1] In addition, the court has reviewed the memoranda submitted by the government and by Abell/NBC, and is now prepared to rule.

The issues raised by Abell/NBC's motion is whether this criminal trial may be closed to the public in the limited way proposed by the government. Although the doors to the courtroom will remain open, the court agrees with Abell/NBC that the playing of the tapes to only the court, counsel, defendant, and the jury is a form of "closure," and may be permitted only in rare cases.

LEGAL ANALYSIS

A. CIPA

In support of its proposal to limit the playing of the tapes, the government cites Section 8(a) of the Classified Information Procedures Act, Pub.L. 96–456, Oct. 15, 1980, 94 Stat. 2025, 18 U.S.C.App. (1985) ["CIPA"]. Section 8(a) provides that "[w]ritings, recordings, and photographs containing classified information may be admitted into evidence without change in their classification status."

 The court does not agree with the government that CIPA provides a statutory basis for the proposed closure. The purpose of CIPA is to provide "pretrial procedures that will permit the trial judge to rule on questions of admissibility involving classified information before introduction of the evidence in open court." S.Rep. No.

823, 96th Cong., 2d Sess. 1, *reprinted in* 1980 U.S. Code Cong. and Ad.News, 4294 [hereinafter cited as "S.Rep. No. 823"]. There is nothing in the legislative history to suggest that the government may close all or part of a public trial. In fact, the Senate Committee, in its notes, stated in reference to Section 8(a) that it "intends to take no position on the question of whether information which is part of a trial record can be withheld from the public after trial." S.Rep. No. 823 at 10.

Section 8(a) "does not affect the classified status of information introduced into evidence." *Id.* The provision merely delays an executive decision on the future classification status of the information until after trial, when a full evaluation can be made on "whether the information has been so compromised during trial that it could no longer be regarded as classified." *Id.*

B. *Public's Right of Access to Criminal Trials*

Both the common law and the first amendment provide the public and the press with the right to attend a criminal trial. Indeed, the values served by requiring criminal trials to be open to the public are considered so important, that the Supreme Court has stated that open trials are "an indispensable attribute" of our system of justice, and that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569, 573, 100 S.Ct. 2814, 2823, 2825, 65 L.Ed.2d 973 (1980) ["*Richmond Newspapers*"]. Not only is the rule of openness part of our legal tradition, but "the right to attend criminal trials is implicit in the guarantees of the First Amendment." *Id.* at 580, 100 S.Ct. at 2829.

Because of the important role that the public trial serves, "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that

---

1. The defendant recognizes that he has a sixth amendment right to a public trial, but for vari-

ous reasons, does not press that issue here, and states that he takes no position in the dispute.

interest." *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984). See also *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).

In the instant case, the government argues that the limited closure it proposes is necessary to protect classified information, and that as this involves matters of national security, the government has demonstrated a "compelling need" for closure. In support, the government cites several cases which, in *dicta,* suggest that national security is an exception to the otherwise strong presumption in favor of openness in all matters in a criminal trial. *See, e.g., Richmond Newspapers, supra,* 448 U.S. at 598 n. 24, 100 S.Ct. at 2839 n. 24 (concurring opinion of Justices Brennan and Marshall using national security concerns as an example of a possible basis for closure); *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1179 (6th Cir.1983) ("Courts have carved out several distinct but limited common law exceptions to the strong presumption in favor of openness", including privacy rights, trade secrets and national security.); *In re National Broadcasting Company, Inc.,* ["*Jenrette*"], 653 F.2d 609, 613 (D.C.Cir.1981) (The right to inspect and copy judicial records is not absolute, and the public has been excluded from court proceedings in order to protect private and public interests, "as well as to guard against risks to national security interests.")

In addition, the government has filed, for *ex parte, in camera* review, a classified affidavit of the Acting Attorney General. The affidavit sets forth in detail the nature of the government's concerns about the classified information that would be revealed if Abell/NBC's motion were granted, and the danger to national security that could result.

Abell/NBC, at somewhat of a disadvantage in responding to the government's contentions since it cannot see the classified affidavit, nonetheless makes three key arguments in response to the government's claims of national security. First, it asserts that since the information in the tapes has been revealed to the Soviets, it is not possible that dissemination to the American public could involve national security concerns. Essentially, Abell/NBC asks how further dissemination can cause any harm if the Soviets already have the information. The court rejects this argument. Although it has a superficial logic to it, upon closer examination, the court finds that it "proves too much." According to this argument, the government should provide the press with all classified information that Pelton allegedly turned over to the Soviets, whether or not it will be used at trial. Clearly the integrity of classified information can be somewhat compromised without necessarily meaning that no harm could result if the information were then made public.

Abell/NBC's second argument is that if the government's concern is about the location of the targeted premises, then the fact that there has already been widespread speculation in the newspapers about the location diminishes the national security concerns associated with that piece of information. While the court finds some merit in this contention, there are two reasons why the court does not agree with Abell/NBC that no national security concerns remain. The first is that there is a difference between speculation and confirmation. As this court stated in *Alfred A. Knopf, Inc. v. Colby,* 509 F.2d 1362, 1370 (4th Cir.1975), in discussing the potential disclosure of classified information by a former CIA agent,

> Rumors and speculations circulate and sometimes get into print. It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so.

Second, there are other concerns involved besides the mere location of the targeted premises. These are set forth in the classified affidavit, and the court finds them to be substantial. Because of the classified nature of the concerns, the court cannot fully discuss them in this opinion. How-

ever, to facilitate any appellate review of this decision, the court will file a sealed, classified opinion elaborating more fully its findings in this matter.

Abell/NBC's third argument is that the classified nature of the tapes will be compromised in any event when they are played to the jury, and that undoubtedly the press will question the jury after the trial has ended. The court does not find that this possibility overcomes all of the national security concerns set forth in the classified affidavit. In addition, Section 6 of the Security Procedures Established by the Chief Justice of the United States, pursuant to Section 9 of CIPA, provides:

6. *Jury.* Nothing contained in these procedures shall be construed to require an investigation or security clearance of the members of the jury or interfere with the functions of a jury, including access to classified information introduced as evidence in the trial of a case.

After a verdict has been rendered by a jury, the trial judge should consider a government request for a cautionary instruction to jurors regarding the release or disclosure of classified information contained in documents they have reviewed during the trial.

Thus, there is the implication that the fact that classified information is revealed to the jury should not automatically have a bearing on its classification status.

CONCLUSIONS

■ Although the proposed closure in this case is very limited, the court agrees with Abell/NBC that it must begin with a presumption against closure, and should permit it for only the most compelling reason, and in the most narrow manner possible.

In this case, however, the court believes that there is such a compelling reason. While the court would not find a mere assertion of "national security" sufficient to overcome the important first amendment values at issue, in this case the court has conducted its own analysis of the classified affidavit and the unredacted transcripts, and finds that there are serious national security concerns that would be affected if Abell/NBC's motion were granted.

■ In balancing the opposing interests of national security and the public's right of access to a public trial, the court finds it important that both interests can be reasonably well-accommodated by making public a redacted version of the transcripts. While a redaction necessarily reduces the total amount of information available to the public, the court believes that by redacting only the words relating directly to the government's concerns, there will remain a substantial amount of information available to the public, and the flow of information will not be "truncated."[2] As the Supreme Court stated in *Richmond Newspapers*, the question in a particular case is whether limitations on access imposed by the trial judge are exerted so as not to deny or unwarrantedly abridge the opportunities for the communication of thought and the discussion of public questions. 448 U.S. at 581 n. 18, 100 S.Ct. at 2830 n. 18. The court believes that the deletion of certain, very limited portions of the transcript, will have little, if any, impact on "public discussion."

It is also important to the court that only a very small amount of evidence is being withheld. The tapes in question are estimated to have a combined length of less than five minutes, and the trial in this case is expected to last for five to eight days (excluding jury selection). While the mere "amount" of evidence restricted should never be the determinative factor, the court finds it to be significant in analyzing the "closure's" impact on the flow of information to the public. Were the government seeking to close significant periods of the trial, the balance struck by the court might

---

2. The court has already asked the government to provide a redacted transcript to it in order for the court to evaluate the extent of the deletions the government wishes to make. Upon initial review, it appears to the court that the government has deleted nothing more than the minimum required to protect its national security concerns. However, the court will carefully compare the redacted version to the unredacted version for accuracy and to determine whether all the proposed deletions are necessary.

well be different. But in the instant case, the court finds that the purposes and values served by our tradition of public trials are not burdened by the closure suggested by the government, and that significant concerns of national security will be protected.

For the foregoing reasons, it is this 23rd day of May, 1986, by the United States District Court for the District of Maryland,

ORDERED:

(1) that Abell and NBC's motion to intervene and for access to audio tapes admitted into evidence be, and the same hereby is, *Denied;*

(2) that on the day the tapes are played to the jury, the government provide copies of the redacted version of the transcripts to the news media and to any persons present in the courtroom.