Filed:  May 13, 2003

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 03-4162**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

ZACARIAS MOUSSAOUI,

Defendant - Appellee,

and

ABC, INC.; ASSOCIATED PRESS; CABLE NEWS
NETWORK LP, LLLP; CBS BROADCASTING, INC.; THE
HEARST CORPORATION; NATIONAL BROADCASTING
COMPANY, INC.; THE NEW YORK TIMES COMPANY; THE
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS;
THE STAR TRIBUNE COMPANY; TRIBUNE COMPANY; AND
THE WASHINGTON POST,

Movants - Intervenors.

———————

**ORDER**

———————

A consortium of media companies and an organization

(collectively, "Intervenors")[1] moves to intervene for the limited

———————

[1]    Intervenors are ABC, Inc.; Associated Press; Cable News
Network LP, LLLP; CBS Broadcasting Inc.; The Hearst Corporation;
National Broadcasting Company, Inc.; The New York Times Company;
The Reporters Committee for Freedom of the Press; the Star Tribune
Company; Tribune Company; and The Washington Post.

purpose of obtaining access to certain portions of the record and oral argument in this appeal.[2]  We grant the motion to intervene for a limited purpose.  Our ruling with respect to the motion for access to portions of the record and oral argument is set forth below.

## I.

Zacarias Moussaoui has been indicted on numerous charges stemming from his alleged participation in the al Qaeda plot that culminated in the attacks of September 11, 2001.  In the course of preparing for his capital trial, Moussaoui, who is proceeding pro se, sought access to several captured leaders of al Qaeda.  The Federal Public Defender, acting as Moussaoui's standby counsel, supported these requests.  In a sealed order, the district court granted Moussaoui's request as to one of these operatives.  The court directed that the operative's testimony be taken by means of a deposition pursuant to Federal Rule of Criminal Procedure 15, and set forth measures governing the conduct of the deposition.

The Government timely appealed the order of the district court.  In addition to its notice of appeal, the Government filed a petition for a writ of mandamus--styled <u>In re United States</u>,

---

[2]     A randomly selected panel has been assigned to hear argument in the underlying appeal.  A second panel, also randomly selected, has been assigned for the purpose of ruling on these motions.

No. 03-4261--seeking the same relief.[3]  Although the appeal and the mandamus petition have not been consolidated, they are being handled together and are scheduled to be argued simultaneously on June 3.

Due to the sensitive nature of the information involved in this appeal, much of which is classified top secret, the pleadings and motions filed by Moussaoui, standby counsel, and the Government have been filed under seal, at least initially. Additionally, based upon our determination that oral argument would involve extensive discussion of classified material, we granted the Government's motion to seal oral argument.  Intervenors now contend that such extensive sealing is both unnecessary and violative of their constitutional and common law rights of access to judicial materials and proceedings.

II.

The right of access to judicial documents exists at common law and under the First Amendment.  See Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988).  The common law provides a presumptive right to inspect and copy all judicial records and documents, see Nixon v. Warner Communications, Inc.,

---

[3]    Intervenors filed substantively identical motions to intervene for a limited purpose and for access to pleadings and oral argument with respect to the petition for a writ of mandamus. Our rulings on Intervenors' motions in this case apply equally to their motions in No. 03-4261.

435 U.S. 589, 597 (1978), while the First Amendment provides a "guarantee of access ... only to particular judicial records and documents," Stone, 855 F.2d at 180. The First Amendment guarantees access when (1) "the place and process have historically been open to the press and general public" and (2) "public access plays a significant positive role in the functioning of the particular process in question." Press-Enterprise Co. v. Superior Ct. (Press-Enterprise II), 478 U.S. 1, 8 (1986); see Baltimore Sun Co. v. Goetz, 886 F.2d 60, 64 (4th Cir. 1989). The right of the press and public to attend judicial proceedings is a creature of the First Amendment. See In re Knight Publ'g Co., 743 F.2d 231, 233 (4th Cir. 1984) (citing Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 (1980) (opinion of Burger, C.J.)).

The value of openness in judicial proceedings can hardly be overestimated. "The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." Union Oil Co. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000); see Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 572 (1980) (opinion of Burger, C.J.) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."). In criminal proceedings, "[o]penness ... enhances

4

both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." <u>Press-Enterprise Co. v. Superior Ct. (Press-Enterprise I)</u>, 464 U.S. 501, 508 (1984).

Public criminal trials also have "a community therapeutic value":

> Criminal acts, especially violent crimes, often provoke public concern, even outrage and hostility; this in turn generates a community urge to retaliate and desire to have justice done.... When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions. Proceedings held in secret would deny this outlet and frustrate the broad public interest; by contrast, public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct ....

<u>Id.</u> at 508-09. This value, of providing to the community at large a sense that justice has been done, is particularly relevant in the prosecution of Moussaoui. Thus far, Moussaoui is the only individual being prosecuted in a civilian court for complicity in the September 11 attacks, and the proceedings have been the subject of intense public interest throughout the country. In this vein, it is significant that no small amount of interest in the trial stems from concern about whether the government is affording sufficient protection to Moussaoui's constitutional rights and the rights of other terrorism suspects.

5

Despite its importance, the right of access--whether guaranteed by the common law or the First Amendment--is not absolute. The common law right of access must yield to the supervisory power of the court to control its own records when "the public's right of access is outweighed by competing interests." In re Knight Publ'g, 743 F.2d at 235; see Nixon, 435 U.S. at 598 (describing circumstances in which competing interests have outweighed common law right of access). When access is guaranteed by the First Amendment, it may be curtailed only in favor of a compelling Governmental interest, and the limitation of access must be "narrowly tailored to serve that interest." Globe Newspaper Co. v. Superior Ct., 457 U.S. 596, 606-07 (1982); see Press-Enterprise I, 464 U.S. at 510 ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

## A. CIPA

The Classified Information Procedures Act (CIPA), 18 U.S.C.A. App. 3 §§ 1-16 (West 2000 & Supp. 2003) sets forth procedures for the handling of classified information in criminal cases. It was enacted for the purpose of preventing "graymail," a practice in which a criminal defendant attempts to derail his prosecution by threatening to divulge classified information during trial. See United States v. Smith, 780 F.2d 1102, 1105 (4th Cir.

1985).  Under CIPA, the district court may be required to conduct a pretrial hearing to determine whether classified information the defendant intends to disclose during the course of trial is relevant and admissible.  See 18 U.S.C.A. App. 3 § 6(a).  CIPA further provides that if the Attorney General certifies that a public hearing will result in the disclosure of classified information, the hearing will be held in camera.  See id.  CIPA allows the Government to pursue an interlocutory appeal of certain orders entered pursuant to its provisions.  See id. § 7(a).

The Government argues that the question of whether the public is entitled to access to the pleadings and argument in this case is answered, in the negative, by CIPA. We disagree with the Government's contention that because this appeal is related to CIPA, all of the materials and the oral argument must be held under seal.[4]  As Intervenors note, CIPA alone cannot justify the sealing of oral argument and pleadings.  See In re Wash. Post Co., 807 F.2d 383, 393 (4th Cir. 1986) (noting that the district court must conduct constitutional inquiry even when CIPA applies because "[t]he district court may not simply assume that Congress has struck the correct constitutional balance"); United States v.

---

[4]    Additionally, we note that throughout its opposition to Intervenors' motion, the Government has phrased its arguments as though every document filed with this court contains classified information.  This is not correct, and we decline the Government's implicit invitation to gloss over the significant differences in the kinds of materials that have been presented to us.

7

Poindexter, 732 F. Supp. 165, 167 n.9 (D.D.C. 1990) (observing that "CIPA obviously cannot override a constitutional right of access"). Indeed, even in the absence of CIPA, the mere assertion of national security concerns by the Government is not sufficient reason to close a hearing or deny access to documents. See In re Wash. Post, 807 F.2d at 391-92. Rather, we must independently determine whether, and to what extent, the proceedings and documents must be kept under seal. See United States v. Pelton, 696 F. Supp. 156, 159 (D. Md. 1986). As noted below, Intervenors do not seek access to classified information, and any such information will remain under seal.

### B. Balancing the Interests

### 1. Classified Information

At the outset, we note that there can be no doubt that the Government's interest in protecting the security of classified information is a compelling one. See Dep't of Navy v. Egan, 484 U.S. 518, 527 (1988). And, Intervenors disavow any desire to obtain the release of classified information.[5] We therefore

---

[5] Nevertheless, Intervenors maintain that we need not defer to the classification decisions of the Government. Implicit in this assertion is a request for us to review, and perhaps reject, classification decisions made by the executive branch. This we decline to do. See United States v. Smith, 750 F.2d 1215, 1217 (4th Cir. 1984) ("[T]he government ... may determine what information is classified. A defendant cannot challenge this classification. A court cannot question it.").

Intervenors also note that much of the information contained in the pleadings has been reported publicly and suggest

8

conclude that all classified information filed with this court in relation to this appeal will remain under seal.

## 2. Moussaoui's Pleadings

Since the beginning of the proceedings against him in the district court, Moussaoui has filed numerous pro se pleadings in this court, none of which has been classified. Our practice with respect to a pleading by Moussaoui is as follows. See generally United States v. Moussaoui, No. 03-4162 (4th Cir. Apr. 18, 2003) (order designating court security officer). The pleading is initially filed under seal to provide the Government an opportunity to submit proposed redactions.[6] The pleading and motion to redact are then submitted to the panel assigned to this case, which rules on the pleading and on the motion. The redacted pleading is then placed in the public file.

Intervenors do not contest the adequacy of this procedure, and we decline to alter it. Redaction of Moussaoui's pleadings is necessary to omit irrelevant and inflammatory material

---

that for this reason, sealing is no longer required. This court has previously rejected such an argument, noting that "[i]t is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so." Alfred A Knopf, Inc. v. Colby, 509 F.2d 1362, 1370 (4th Cir. 1975); see Pelton, 696 F. Supp. at 158 ("[T]here is a difference between speculation and confirmation.").

[6] The motion to redact is placed in the public file, but the proposed redactions are kept under seal.

and to prevent Moussaoui from attempting to communicate certain information to others, see Special Administrative Measures for Zacarias Moussaoui, § 1(c), news.findlaw.com/hdocs/docs/moussaoui/ usmouss41702qsam.pdf (last visited May 3, 2003). The interest of the public in the flow of information is protected by our exercising independent judgment concerning redactions. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (cautioning that a court may not delegate task of redacting documents); Pelton, 696 F. Supp. at 159 n.2 (noting that court would "carefully compare the redacted version [of a transcript] to the unredacted version for accuracy and to determine whether all the proposed deletions are necessary").

### 3. Briefs

To date, three briefs have been filed: the Government's initial brief, an Appellee's brief filed by the Federal Public Defender, and the Government's reply brief. All of the briefs contain classified information, and for this reason they were initially filed under seal with the Court Security Officer assigned to this case. As of this writing, a redacted version of the Government's initial brief has been placed in the public file, and the remaining briefs will also be filed publicly when the redaction process is complete. In accordance with our duty to independently examine the Government's redactions, we will carefully compare the redacted version of each brief to the unredacted version to ensure

10

that the redactions of unclassified material are no greater than necessary.[7] See Pelton, 696 F. Supp. 159 n.2. That process is not affected by this order.

## 4. Joint Appendix

The joint appendix for this appeal consists of four parts: an ex parte appendix filed by the Government, which consists solely of highly classified documents; an ex parte appendix filed by the Federal Public Defender, which also consists solely of classified documents; a classified appendix which contains the remaining classified information pertinent to this appeal, but which is not solely comprised of classified documents; and an unclassified appendix, which is presently under seal because it comprises materials kept under seal by the district court. See Local Rule 10(d) (noting that material placed under seal by the district court remains under seal unless the protective order is modified or amended by this court); cf. Stone, 855 F.2d at 182 (noting that district court has "superior vantage point" from which to make decisions regarding sealing of materials before it).

For the reasons discussed above, we conclude that the ex parte appendices must be kept under seal, in their entirety, because they consist entirely of classified information. We doubt, however, that either the unclassified information in the classified

---

[7] We will do the same with the pleadings related to the Government's petition for a writ of mandamus, a redacted version of which is now publicly available.

11

appendix, or the documents in the unclassified appendix, need to remain sealed in their entirety. As noted above, while the classified appendix contains a number of classified documents, not all of the documents therein are classified, and it appears that at least some of the documents that contain classified information could be made public (assuming a common law or First Amendment right of access attaches) after classified material is redacted. The unclassified appendix contains a wide variety of materials, such as pleadings, hearing and deposition transcripts, and some discovery materials. Some of these documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment. Still others may not qualify as "judicial records" at all. See Amodeo, 44 F.3d at 145-46 (discussing when a document filed with the court is a "judicial record"). We therefore must examine the unclassified appendix document by document to determine, for each document, the source of the right of access (if any such right exists). See Stone, 855 F.2d at 181. As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part.

The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access. See Boone v. City of Suffolk, 79 F. Supp. 2d 603, 606 (E.D. Va.

12

1999).  Accordingly, we think it is appropriate to require the Government to justify the continued sealing of the unclassified materials in the classified and unclassified appendices.  We therefore direct the Government to do the following within ten days of the entry of this order:

- As to the classified appendix, identify, with as much specificity as possible, what material is classified;

- As to each document in the classified and unclassified appendices, present its views concerning whether the document is subject to a common law or First Amendment right of access;

- As to all material identified as (a) unclassified and (b) subject to a right of access, offer argument concerning continued sealing.  This argument shall account for the fact that sealing an entire document is inappropriate when selective redaction will adequately protect the interests involved.  Any proposed redaction shall be accompanied by a statement of the reason for the proposed redaction.

Upon receipt of the Government's submission, this court will proceed to review the unclassified materials in both appendices and determine which of the documents therein should remain sealed.

### 5.  Miscellaneous Pleadings

Presently pending before this court is the Federal Public Defender's motion to disclose or strike the ex parte appendix.  The primary documents filed in connection with this motion are the motion itself, the Government's opposition to the motion, and the Public Defender's reply to the opposition.  Redacted versions of the first two pleadings have been placed in the public file, and a redacted version of the Public Defender's reply to the opposition

13

will be placed in the public file in due course.  As with other redacted documents, we will review the redactions to ensure that they are no greater than necessary.

Intervenors also protest the sealing of (1) the Government's certificate of confidentiality and motion to seal oral argument, and (2) the motion to seal the certificate of confidentiality and motion to seal oral argument.  The Government sought to seal these documents on the basis that placing them in the public file would reveal the substance of the district court order presently being appealed.  In view of the fact that the nature of the district court order is apparent from the text of the Government's redacted opening brief, which is available to the press and general public, this justification can no longer stand. We therefore order that the certificate of confidentiality and motion to seal argument, and the motion to seal the certificate of confidentiality and motion to seal oral argument, be unsealed and placed in the public file.

### 6.  Oral Argument

It is with respect to oral argument that the Government presses most strongly its claim that CIPA controls.  The Government maintains that its appeal of the district court order is taken pursuant to § 7 of CIPA; from this premise, it concludes that the appeal itself is a "CIPA proceeding" which must be held in camera. Cf. Poindexter, 732 F. Supp. at 168 & n.10 (stating that First

14

Amendment does not guarantee access to a "CIPA-type" hearing at which "highly sensitive classified materials" would be discussed). However, it is not at all clear that the appeal arises from CIPA-- the Government asserts CIPA as only one of three bases for appellate jurisdiction. More important, however, is the significant difference in language between sections 6 and 7 of CIPA. Section 6 explicitly requires the district court to hold an in camera hearing if the Attorney General certifies that classified information would be revealed by a public hearing, but § 7 contains no such requirement. Cf. United States v. Brandon, 247 F.3d 186, 190 (4th Cir. 2001) (noting "fundamental principle of statutory construction that courts are obligated to give effect to Congress's decision to use different language in proximate subsections of the same statute" (internal quotation marks omitted)). We therefore conclude that even if this appeal is authorized by CIPA § 7, that fact alone does not mandate that the hearing be conducted in a sealed courtroom.

We are left with the questions of whether the First Amendment guarantees access to the hearing and, if so, whether the sealing of argument is justified by a compelling interest. The first question is easily answered: There can be no question that the First Amendment guarantees a right of access by the public to oral arguments in the appellate proceedings of this court. Such hearings have historically been open to the public, and the very

15

considerations that counsel in favor of openness of criminal trial support a similar degree of openness in appellate proceedings. Cf. In re Knight Publ'g, 743 F.3d at 234 (noting "strong presumption in favor of openness" in criminal proceedings).

The second question is more difficult. As discussed above, the Government's interest in the security of classified information is a compelling one, and, as we have noted previously, Intervenors do not seek access to any classified information. However, we believe that argument on several of the issues will not require the discussion of classified information. We therefore order that the oral argument in this appeal will be bifurcated. The first portion of oral argument will take place in a courtroom open to the press and general public. The following issues, and only the following issues, will be discussed during that portion of the argument:

- Whether this court has jurisdiction over the appeal;

- Whether separation of powers concerns mandate reversal of the district court's order;

- Whether compulsory process reaches an enemy combatant held overseas.

While we believe that these issues can be effectively argued without discussion of classified information, it is possible that argument on these issues could lead to brief mention of classified matters. We assume counsel will be mindful of this possibility and will take care to avoid such references in open court. Should

counsel believe that reference to classified information is necessary, such a discussion will be reserved to the second part of oral argument, which will be conducted in a sealed courtroom. Argument on all issues involving the discussion of classified information will be reserved to this portion of the hearing.

Unquestionably, our decision to partially seal argument infringes, albeit for good reasons, upon the rights of the press and the public. We believe, however, that this harm can be substantially ameliorated by the release of a redacted transcript of the sealed hearing as soon as is practicable after the conclusion of argument. This will be accomplished through the following procedure. The sealed portion of the hearing will not be recorded but rather will be transcribed by a court reporter. We hereby direct the court reporter to produce a written transcript of the sealed proceedings within 24 hours of the conclusion of argument. This transcript will then be submitted to the Government, which will proceed immediately with a classification review and redaction of the transcript. The entire redacted transcript shall be provided to the court for placement in the public file no later than five business days after the submission of the unredacted transcript to the Government. In order to further limit the harm to the public's right of access, we direct

17

the Government to provide the court with whatever portion of the transcript has been reviewed and redacted to that point by noon of each day between the submission of the unredacted transcript and the release of the final redacted version.

## III.

To summarize, we grant Intervenors' motion to intervene for a limited purpose. With respect to Intervenors' motion for access to certain portions of the record and oral argument, we conclude (and Intervenors do not dispute) that all classified information involved in this appeal will remain under seal. For that reason, we deny the motion for access insofar as it concerns the ex parte appendices. The press and general public will be provided access to unclassified materials in the classified and unclassified appendices after we have redacted those materials with the aid of the Government's submissions, which are due ten days from the date of this order. As set forth above, the Government must provide us with reasons for its proposed redactions of unclassified materials and specifically identify those materials that are classified. The certificate of confidentiality and motion to seal argument, and the motion to seal the certificate and motion

18

to seal argument, are hereby unsealed and will be placed in the public file.

Entered at the direction of Chief Judge Wilkins, with the concurrences of Judge Widener and Judge Niemeyer.

FOR THE COURT

/s/ Patricia S. Connor
_____
Clerk

19